ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| COMISIONADO DE SEGUROS DE PUERTO RICO<br><br>Recurrido<br><br>V.<br><br>TRIPLE-S ADVANTAGE, INC.<br><br>Recurrente | | *Revisión Judicial* procedente de la Oficina del Comisionado de Seguros de Puerto Rico<br><br>Caso Núm.: PP-2022-26<br><br>Sobre: Solicitud de Intervención presentada por el Laboratorio Clínico Dajaos; PP-19-20A-02-00059 |
| COMISIONADO DE SEGUROS DE PUERTO RICO<br><br>Recurrido<br><br>V.<br><br>TRIPLE-S ADVANTAGE, INC.<br><br>Recurrente | KLRA202200622 | Revisión Judicial procedente de la Oficina del Comisionado de Seguros de Puerto Rico<br><br>Caso Núm.: PP-2022-27<br><br>Sobre: Solicitud de Intervención presentada por el Laboratorio Clínico Pajuil; PP-19-20A-02-00052 |
| COMISIONADO DE SEGUROS DE PUERTO RICO<br><br>Recurrido<br><br>V.<br><br>TRIPLE-S ADVANTAGE, INC.<br><br>Recurrente | | Revisión Judicial procedente de la Oficina del Comisionado de Seguros de Puerto Rico<br><br>Caso Núm.: PP-2022-28<br><br>Sobre: Solicitud de Intervención presentada por el Laboratorio Clínico Royal Gardens; PP-19-20A-02-00072 |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Rodríguez Flores y el Juez Monge Gómez[1].

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2023.

Compareció ante este Tribunal la parte recurrente, Triple S Advantage, Inc. (en adelante, "TSA" o el "Recurrente") mediante recurso de revisión judicial presentado el 17 de noviembre de 2022. Nos solicitó la

---

[1] Mediante Orden Administrativa OATA-2023-001 de 9 de enero de 2023, se designó al Hon. José Johel Monge Gómez en sustitución del Hon. Félix R. Figueroa Cabán, para entender en los méritos del presente caso.

revocación de la *Resolución* emitida por el Comisionado de Seguros (en adelante, el "Comisionado" o la "Recurrida") el 18 de octubre de 2022, notificada al día siguiente, mediante la cual confirmó tener jurisdicción para atender las Solicitudes de Intervención presentadas contra TSA.

Por los fundamentos que expondremos a continuación, se *confirma* al dictamen recurrido.

**I.**

Los hechos del presente recurso se remontan a la presentación de tres (3) solicitudes de intervención presentadas por el Laboratorio Clínico Dajaos (en adelante, "Proveedor I"), Laboratorio Clínico Pajuil (en adelante, "Proveedor II") y Laboratorio Clínico Royal Gardens (en adelante, "Proveedor III"), tras recibir una misiva de fecha de 5 de junio de 2018, mediante la cual TSA notificó que habían identificado reclamaciones pagadas en exceso, por lo que pretendía hacer un recobro. En vista de ello, los proveedores le requirieron a la Oficina del Comisionado del Seguro de Puerto Rico (en adelante, la "OCS"), que investigara las actuaciones de TSA ante el recobro del pago de reclamaciones.[2] Ello resultó en las siguientes solicitudes de intervención: PP-19-20A-00052, PP-19-20A-00059 y PP-19-20A-00072.

El Comisionado cursó, para cada solicitud de intervención, un Requerimiento de Información al Recurrente, al amparo del Artículo 2.130 del Código de Seguros de Puerto Rico, 26 LPRA sec. 245. En los tres casos, se le notificó a TSA que:

> Se le apercibe a la Organización, que el dejar de cumplir con este requerimiento, dentro del tiempo concedido para ello, constituirá una obstrucción al poder de investigación que la ley le confiere al Comisionado de Seguros y un incumplimiento de una orden de dicho funcionario, lo que podrá conllevar la imposición de sanciones.

En el caso del Proveedor II, se le concedió hasta el 28 de julio de 2020, y hasta el 24 de agosto de 2020 en el restante para contestar el requerimiento. No obstante, el 27 de septiembre de 2020, el Recurrente

---

[2] El Laboratorio Clínico Dajaos presentó su solicitud el 2 de abril de 2019, el Laboratorio Clínico Pajuil el 27 de marzo de 2019 y el Laboratorio Clínico Royal Gardens el 11 de abril de 2019.

envió una carta alegando que la OCS carecía de jurisdicción para regular y fiscalizar los asuntos de recobro por parte de un plan Medicare Advantage (en adelante, "MA") por ser campo ocupado y no sujetos a reglamentación estatal, además de solicitar el cierre de dicha investigación.

El 6 de mayo de 2022, notificadas el 10 de mismo mes y año, la OCS emitió las *Órdenes* PP-2022-26, PP-2022-27 y PP-2022-28,[3] mediante las cuales le imputó a TSA infringir el Artículo 2.130 (1) del Código de Seguros, *supra*, por dejar de proveer la información solicitada en los Requerimientos, al igual que por incumplir con la Regla I-A de Procedimientos de Investigación, Reglamento Núm. 5266 de 3 de julio de 1996, según enmendado. Como resultado, le impuso una multa por la suma de $5,000.00 por cada orden incumplida, para un total de $15,000.00. Igualmente, se le requirió someter la información solicitada en los Requerimientos y se le apercibió de su derecho a solicitar vista administrativa.

El 17 de mayo de 2022, TSA solicitó Vista Administrativa para todas las solicitudes, al amparo del Artículo 2.190 del Código de Seguros, 26 LPRA sec. 251.[4] Allí argumentó que el invocar la defensa de falta de jurisdicción no debía ser interpretado como incumplimiento u obstrucción a la investigación, lo cual resultó en la imposición de multa.

Así las cosas, el 28 de junio de 2022, mediante "**Moción Conjunta en Solicitud de Consolidación y Remedio**", la OCS y TSA solicitaron la consolidación de los tres (3) casos. Asimismo, solicitaron presentar memorandos de derecho en sustitución a la Vista Administrativa debido a que la controversia era una de derecho. En atención a dicha solicitud, el 1 de julio de 2022, notificada el 6 de igual mes y año, la Oficial Examinadora de la OCS consolidó los casos y dejó sin efecto la vista antes solicitada. Igualmente, concedió hasta el 8 de agosto de 2022, para presentar los memorandos y un término de quince (15) días a ambas partes para replicar.

---

[3] *Véase, Órdenes* emitidas el 6 de mayo de 2022, Ap. del Recurrente a las págs. 259-277.
[4] *Véase,* "**Solicitud de Vista Administrativa**", Ap. del Recurrente a las págs. 250-258.

A esos efectos, TSA presentó el 8 de agosto de 2022, "**Comparecencia Especial Solicitando Desestimación por Falta de Jurisdicción**". En síntesis, sostuvo que la OCS no tenía jurisdicción para intervenir con una organización que suscribe planes MA, pues los casos en controversia no versaban sobre licenciamiento o solvencia. Indicó que el recobro no constituye parte de las disposiciones de pago puntual que pudieran ser –por acuerdo de las partes– sujetas a la reglamentación estatal, y que este es campo ocupado por legislación federal. Así mismo, planteó que presentar la defensa privilegiada de jurisdicción no debía considerarse como un incumplimiento con las órdenes, sino que la agencia tenía la obligación de auscultar su autoridad para entender los casos. En fin, sostuvo que, aun teniendo jurisdicción, no se produjo un incumplimiento por lo que debían eliminar las multas impuestas.

Por otro lado, la OCS presentó su "**Memorando de Derecho**" oportunamente. En este planteó que tenían jurisdicción debido a que TSA está autorizado a hacer negocios de seguros en Puerto Rico como organización de servicios de salud, por lo que le es de aplicación el Código de Seguros. Argumentó que de las disposiciones federales no surge prohibición alguna sobre legislación estatal, ni disposición específica acerca del pago puntual de reclamaciones por organizaciones que proveen planes MA. La OCS hizo la distinción e indicó que la reglamentación federal contiene disposiciones y remedios específicos para el pago puntual en los casos de reclamaciones de un suscriptor o de un proveedor no perteneciente a la organización de MA, pero que ello no existe en los casos de proveedores participantes de la organización. Establece que lo que requiere la reglamentación federal es que en los contratos entre el asegurador u organización de servicios de salud y los proveedores participantes, acuerden los términos para el pago de las reclamaciones. Por consiguiente, y debido a que en el presente caso TSA y los proveedores habían acordado que las reclamaciones se iban a trabajar dentro del periodo establecido por la Ley Núm. 104-2002, también conocida

como la "Ley para el Pago Puntual de Reclamaciones a Proveedores de Servicios de Salud", *infra*, y bajo la Regla 73 del Reglamento Núm. 6559 de 8 de enero de 2003, según enmendado, la OCS tenía jurisdicción.

De igual forma, arguyó que se cumplía con el primer requisito de las dos (2) instancias que, al amparo de la Carta Normativa Núm. 2010-110-PP, establece cuándo la OCS tendrá jurisdicción para hacer valer las disposiciones de la Ley de Pago Puntual, *supra*, en casos de reclamaciones presentadas bajo el plan de MA. Específicamente, sostuvo que le aplicaba aquella disposición que establece "[c]uando las partes en el contrato hayan pactado expresamente adoptar la Ley de Pago Puntual para regir los procedimientos de pago de reclamaciones".[5]

Ambas partes presentaron sus réplicas el 23 de agosto de 2022, mediante las cuales reiteraron los planteamientos esbozados en sus memorandos.

Analizadas las posturas de ambas partes, el Comisionado de Seguros emitió *Resolución* el 18 de octubre de 2022, notificado al día siguiente. Determinó que la OCS tiene jurisdicción para atender las solicitudes de intervención, por lo que confirmó las multas impuestas. Igualmente, confirmó la *Orden* de contestar los Requerimientos, para lo cual concedió treinta (30) días a partir de la notificación.

Insatisfecho con tal determinación, TSA acudió ante nos mediante recurso de revisión judicial alegando la comisión de los siguientes errores:

**ERRÓ LA OCS AL DETERMINAR QUE POSEE JURISDICCIÓN SOBRE LOS CASOS CONSOLIDADOS SIN ANALIZAR LA APLICABILIDAD DE LA DOCTRINA DEL CAMPO OCUPADO. EN VIRTUD DEL MEDICARE ACT, SE DESPLAZA LA LEGISLACIÓN ESTATAL, CON EXCEPCIÓN DE TEMAS DE SOLVENCIA Y LICENCIAMIENTO. COMO CONSECUENCIA DE ELLO, LA OCS DESATENDIÓ QUE LAS DISPOSICIONES DEL CÓDIGO DE SEGUROS INVOCADAS NO TRATAN SOBRE TALES TEMAS Y, POR CONSIGUIENTE, NO PUEDEN SER UTILIZADAS COMO FUNDAMENTO PARA EJERCER JURISDICCIÓN SOBRE TSA EN TEMAS DE MEDICARE ADVANTAGE.**

**ERRÓ LA OCS AL DETERMINAR QUE POSEE JURISDICCIÓN SOBRE LA MATERIA CUANDO LOS RECOBROS DE PAGOS EFECTUADOS A LOS**

---

[5] *Véase*, Carta Normativa Número 2010-110-PP, Ap. del Recurrente a la pág. 94.

**PROVEEDORES RELACIONADOS CON LA CUBIERTA DE MEDICARE ADVANTAGE NO FORMAN PARTE DE LAS DISPOSICIONES DE PAGO PUNTUAL QUE PUDIERAN SER -POR ACUERDO DE LAS PARTES- SUJETAS A LA REGLAMENTACIÓN FEDERAL.**

**ERRÓ LA OCS AL CONFIRMAR LA IMPOSICIÓN DE LAS MULTAS Y, POR CONSIGUIENTE, INTERPRETAR QUE CUANDO UNA PARTE PRESENTA OPORTUNAMENTE UNA DEFENSA PRIVILEGIADA SOBRE FALTA DE JURISDICCIÓN, IMPLICA UN AUTOMÁTICO INCUMPLIMIENTO CON LAS ÓRDENES DICTADAS.**

La OCS presentó su alegato en oposición el 9 de febrero de 2023. Así las cosas, el Recurrente mediante "**Moción Informativa**" nos solicitó que tomáramos conocimiento judicial sobre una *Sentencia* emitida el 18 de enero de 2023, por el Tribunal de Circuito de Apelaciones para el Primer Circuito en Medicaid and Medicare Advantage Products Association of Puerto Rico, *et al.* v. Domingo Emanuelli *et al.*, caso núm. 21-1297, 213-1379.

Allí, la controversia giró en torno a la Ley Núm. 90-2019, la cual enmendó el Artículo 19.150 (7) del Código de Seguros de Puerto Rico, 26 LPRA sec. 1915(7), para requerir que las organizaciones de MA pagaran a los proveedores de Puerto Rico una tarifa no menor a la establecida por la agencia federal *Centers for Medicare and Medicaid Services* (en adelante, "CMS"). TSA planteó que dicho foro concluyó que el *Medicare Advantage Act* ocupa el campo, por lo que desplaza toda ley estatal o ejercicio de autoridad administrativa estatal que reglamente los planes de MA. Por consiguiente, solicitó que en el caso de autos se declare Ha Lugar la petición de revisión judicial por ser las actuaciones del Comisionado de Seguro nulas, ya que aplica la doctrina de campo ocupado.

**II.**

**A.**

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono

con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Camacho Torres v. AAFET, 168 DPR 66, 91 (2006). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Otero v. Toyota, 163 DPR 716, 727 (2005). En los casos de revisión judicial, "[e]l criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable". Rivera Concepción v. A.R.Pe, 152 DPR 116, 124 (2000).

La Sección 4.5 de la LPAU dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

**Las conclusiones de derecho**, tal y como surge de la Sección 4.5 de la LPAU, **pueden ser revisadas en todos sus aspectos**. 3 LPRA sec. 9675 (énfasis suplido). Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de

interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R., Inc. v. Royal Ins. Co., 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. Simplemente, define el carácter limitado de la función revisora a casos apropiados. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**

La doctrina de campo ocupado se cimienta en la Cláusula de Supremacía establecida en la Constitución de los Estados Unidos de América, la cual dispone que: "[t]his Constitution, and the Laws of the United States which shall de be made in Pursuance thereof; […] shall be the Supreme Law of the Land". Art. VI, Const. E.E.U.U., LPRA, Tomo 1. Así pues, en P.R. Dept. of Consumer Affairs v. Isla Petroleum Corp., 485 US 495, 499 (1988), el Tribunal Supremo de Estados Unidos reconoció que dicha doctrina es aplicable a Puerto Rico.

Mediante esta doctrina, también conocida como doctrina de desplazamiento, se busca evitar conflictos regulatorios entre dos gobiernos y fomentar una política uniforme sobre una materia específica. Natal Cruz v. Santiago Negrón, 188 DPR 564, 571-572 (2013). Para poder lograrlo, el Congreso se reserva la potestad de regular ciertas áreas de derecho a nivel

estatal y le concede la jurisdicción exclusiva al Gobierno federal. Ello puede ocurrir: (1) cuando así lo haya expresado el Congreso; (2) cuando la clara intención de la ley sea privar de jurisdicción a los tribunales estatales; (3) cuando el interés o propósito federal es tan dominante que no debe existir reglamentación estatal; o (4) cuando la normativa estatal podría producir un resultado incompatible con los objetivos federales en determinada área. Lilly del Caribe v. Mun. de Carolina, 2022 TSPR 101; 210 DPR ___ (2022); Rodríguez v. Overseas Military, 160 DPR 270, 282 (2003). No obstante lo anterior, "en ausencia de una prohibición específica en la ley federal contra la ley local, la legislación estatal que *complementa* a la ley federal es válida siempre y cuando que la primera no esté sustancialmente en conflicto con la segunda". Rodríguez v. Overseas Military, *supra*, pág. 283 (énfasis en el original). Por consiguiente, la ley federal tendrá supremacía sobre la ley estatal cuando una no pueda coexistir con la otra. Íd., pág. 282. Como consecuencia, será nula toda aquella ley estatal que contravenga una ley federal. Lilly del Caribe v. Mun. de Carolina, *supra*.

### C.

Mediante la aprobación del *Medicare Prescription Drug, Improvement, and Modernization Act of 2003* (en adelante, "Medicare Advantage Act"), Pub. L. No. 108-173 (codificado en 42 USC secs. 1395w-21 a 1395w-28), se enmendó el *Social Security Act* (en adelante, la "Ley del Seguro Social"), 42 USC secs. 301 *et seq.*, para, entre otras cosas, reemplazar el Medicare+Choice por el Medicare Advantage. Así, se dispuso que, bajo el programa MA, la agencia federal *Centers for Medicare and Medicaid Services* (en adelante, "CMS") contrata con organizaciones de mantenimiento de la salud y otras entidades privadas para brindar servicios de atención médica a aquellos inscritos en Medicare. De esta forma, el CMS realiza unos pagos fijos mensuales a las aseguradoras o "MA organization", los cuales son independientes al costo, frecuencia y servicios que provean a los beneficiarios. 42 USC sec. 1395w-23. Para poder ofrecer los planes de MA, el CMS requiere que las organizaciones

de servicios de salud o aseguradoras cuenten con la autorización del estado o territorio para hacer negocios de seguros en dicha jurisdicción.

Así también se dispuso que las normas establecidas en virtud de esta parte de la ley prevalecerán sobre cualquier ley o regulación estatal (con excepción de las leyes estatales de licenciamiento y las relacionadas con la solvencia del plan) con respecto a los planes de MA que ofrecen las organizaciones de MA en virtud de esta parte. 42 USC sec. 1395w-26 (b)(3) (traducción nuestra).[6] Por otro lado, la sección 422.520 del Código de Reglamentos Federales ("CFR", por sus siglas en inglés) dispuso lo único relacionado en dicho estatuto federal sobre el pago puntual. El inciso (a) de dicha sección se enfoca en los pagos puntuales entre CMS y la aseguradora, mientras que el inciso (b) está dirigido a la relación aseguradora y proveedor. Específicamente, se define proveedor como:

(1) Cualquier persona que participe en la prestación de servicios de atención médica en un Estado y tenga licencia o esté certificada por el Estado para participar en esa actividad en el Estado; y

(2) Cualquier entidad que participe en la prestación de servicios de atención médica en un Estado y tenga licencia o certificación para prestar esos servicios si dicha licencia o certificación es requerida por la ley o regulación estatal. 42 CFR sec. 422.520 (traducción nuestra).

Así pues, el inciso (b)(1) de la mencionada sección ordena a las organizaciones o aseguradoras bajo MA a incluir en los contratos con los proveedores cláusulas relacionadas con el pago puntual. 42 CFR sec. 422.520 (b)(1). En su inciso (b)(2), se establece que "la organización bajo el MA está obligada a pagar a los proveedores participantes, **según los términos del contrato entre la organización de MA y el proveedor**". 42 CFR sec. 422.520 (b)(2) (énfasis suplido) (traducción nuestra). Destacamos pues que, aun cuando el Congreso expresamente limitó la

---

[6] "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." Señalamos que, cuando el estatuto indica "this part", se refiere a la parte de la Ley del Seguro Social donde está contenida la disposición sobre lo relativo a los planes de MA. El Medicare Advantage Act incluye a Puerto Rico en su definición de "State". 42 U.S.C. sec. 1395x(x), sec. 410(h).

aprobación de leyes estatales sobre los planes de MA, mediante las precitadas disposiciones reglamentarias se obligó a las partes a pactar cuáles serían los términos y condiciones que regirían el pago puntual de los servicios prestados.

A raíz de ello, al igual que varios estados, nuestra Legislatura enmendó la Ley Núm. 77 de 19 de junio de 1957, conocida como el "Código de Seguros de Puerto Rico", 26 LPRA sec. 101 *et seq.*, mediante la Ley Núm. 104-2002, también conocida como la "Ley para el Pago Puntual de Reclamaciones a Proveedores de Servicios de Salud", 26 LPRA secs. 3001-3008, para crear el Capítulo 30 (en adelante, "Ley de Pago Puntual" o "Capítulo 30"). Ello pues, entendió el legislador que "[p]ropiciar y reglamentar el pago oportuno a los proveedores de salud promoverá la estabilidad y la confianza en los servicios ofrecidos y en el sistema de salud del país".[7] Para ello, fijaron plazos a las aseguradoras para el pago de reclamaciones a los proveedores, crearon un procedimiento para objetar reclamaciones y establecieron penalidades por incumplimientos.[8]

El 19 de marzo de 2010, el Comisionado de Seguros emitió la Carta Normativa Núm. 2010-110-PP sobre la "Aplicabilidad del Capítulo 30 del Código de Seguros de Puerto Rico al pago de reclamaciones por servicios prestados a suscriptores bajo un plan 'Medicare Advantage'". La misma establece que "[l]a reglamentación de CMS exige que todos los contratos entre proveedores y aseguradores u organizaciones de servicios de salud […] incluyan una cláusula sobre el pago puntual de las reclamaciones", según surge de la Sección 422.520 (b) (1) y (2) antes citadas.[9] En vista de que la sección 422.520 del CFR estableció que las aseguradoras u organizaciones de servicios de salud y los proveedores deben determinar, mediante contrato, los términos para el pago de servicios prestados, entiéndase los términos de pago puntual, "es válido que en el contrato éstas

---

[7] Exposición de Motivos, Ley Núm. 104-2002, 26 LPRA secs. 3001 *et seq.*
[8] Íd.
[9] *Véase*, Carta Normativa Número 2010-110-PP, Ap. del Recurrente a la pág. 92.

estipulen adoptar los términos y disposiciones de la ley estatal, que en el caso de Puerto Rico sería el Capítulo 30".[10]

Por consiguiente, cuando las partes contratantes acuerden cumplir con el Código de Seguros, en específico con el Capítulo 30, será la Oficina del Comisionado del Seguros quien tendrá jurisdicción y estará encargada de asegurar el cumplimiento del mismo. Así pues, mediante la Carta Normativa, se establecieron dos (2) instancias en las que la OCS tendrá jurisdicción en casos de reclamaciones presentadas al amparo de un plan de MA, las cuales son:

1. Cuando las partes en el contrato hayan pactado expresamente adoptar la Ley de Pago Puntual para regir los procedimientos de pago de reclamaciones;

2. Cuando el contrato no contenga una cláusula sobre el pago puntual de reclamaciones ("prompt payment provision"), o cuando a pesar de haberla, la cláusula no sea clara ni delimite con especificidad el término de tiempo en que el asegurador u organización de servicios de salud deberá pagar las reclamaciones de los proveedores.[11]

**D.**

Es norma reiterada en nuestro ordenamiento jurídico que "[e]l negocio de seguros está revestido de un alto interés público por su importancia, complejidad y efecto en la economía y la sociedad". Consejo Titulares v. MAPFRE, 208 DPR 761, 773 (2022). Como parte de su propósito fiscalizador, el Comisionado cuenta con la facultad de aprobar reglamentos, además de poseer poder investigativo y de adjudicación a raíz del incumplimiento con las disposiciones establecidas en el Código de Seguros. Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 DPR 425, 442 (1997). Entre los poderes y facultades que tiene el Comisionado, el Artículo 2.030 del Código de Seguros enumera los siguientes: (1) dictar las órdenes necesarias para hacer cumplir las disposiciones del Código y de cualquier otra ley o reglamento administrado por éste; (2) llevar a cabo investigaciones necesarias para asegurar el cumplimiento de las disposiciones del Código y su Reglamento; (3) adjudicar controversias

---

[10] Íd., a la pág. 93.
[11] Íd., a la pág. 94.

sobre violaciones al Código o su Reglamento, cumpliendo para ello con el procedimiento dispuesto en la 'Ley de Procedimiento Administrativo Uniforme' e (4) "imponer sanciones y penalidades administrativas por violaciones a este Código y a los reglamentos aprobados en virtud de éste y dictar cualquier remedio pertinente autorizado en el Código". 26 LPRA sec. 235 (10), (12), (14), (17) respectivamente.

El Artículo 4 de la Regla I-A del Reglamento Núm. 5266 del Código de Seguros, promulgado el 3 de julio de 1995, según enmendado (en adelante, "Reglamento Núm. 5266"), dispone que el Comisionado puede hacer las investigaciones e inspecciones convenientes para asegurar el cumplimiento con el Código de Seguros y su Reglamento. Estas investigaciones pueden surgir a solicitud de parte o por iniciativa propia. Artículo 3 del Reglamento Núm. 5266, *supra*. Luego de finalizada dicha investigación y de realizado el informe por escrito, conforme al Artículo 9 del Reglamento Núm. 5266, el Comisionado está facultado para emitir las órdenes que correspondan.

En lo que atañe a la controversia ante nos, el Artículo 30.040 del Código de Seguros establece que:

> **El Asegurador u Organización de Servicios de Salud podrá solicitar el reembolso de una reclamación no procesable pagada al proveedor**, dentro del término de seis (6) años a partir del momento en que el Asegurador u Organización de Servicios de Salud efectuó el pago, **conforme con el procedimiento que establezca mediante reglamento el Comisionado** y luego recurrir al Tribunal correspondiente en revisión judicial, si así lo desea. 26 LPRA sec. 3004 (énfasis suplido).

Acorde con lo antes indicado, el Artículo 6 del Reglamento Núm. 8197, el cual enmienda la Regla 73 del Reglamento Núm. 6559, indica las razones por las cuales el asegurador u organización de servicios de salud podrá solicitar el reembolso de reclamaciones ya pagadas al proveedor que se determinen reclamaciones no procesables para pago:

> 1. La Reclamación corresponde a un servicio de salud no cubierto por el Plan de Cuidado de Salud; o
>
> 2. La Reclamación corresponde a un servicio cubierto pero no prestado; o

3.     La Reclamación corresponde a un servicio más costoso y complejo que el realmente prestado; o

4.     Error en el pago efectuado en cuanto al monto y/o al destinatario; o

5.     Cuando se facture más de una vez por el mismo servicio. Art. 6 del Reglamento Núm. 8197 de 11 de mayo de 2012, Normas para Regular el Pago Puntual de Reclamaciones a los Proveedores de Servicios de Salud.

Igualmente, el Artículo 6 establece que:

Una vez el Asegurador u Organización de Servicios de Salud determine que una Reclamación no procesable fue pagada, podrá solicitar el correspondiente reembolso mediante notificación escrita que incluya los fundamentos en los cuales se basa tal solicitud. La notificación escrita deberá incluir una lista de las Reclamaciones no procesables pagadas y las cantidades a ser recobradas.

[…]

Nada en lo que aquí se dispone invalidará o sustituirá ninguna relación contractual existente o futura que permita métodos alternos de recobro en caso de pago de Reclamaciones no procesables al Proveedor Participante. El Proveedor Participante que objete la solicitud de reembolso deberá agotar el procedimiento interno que haya establecido el Asegurador u Organización de Servicios de Salud antes de acudir ante la Oficina del Comisionado de Seguros para plantear la objeción mediante la solicitud de una investigación. Íd.

Asimismo, la Ley de Pago Puntual otorga la facultad al Comisionado de Seguros de imponer multas administrativas y sanciones por violaciones e incumplimientos con dicho Capítulo 30. En específico, el Artículo 30.080 del Código de Seguros establece, en lo pertinente, que:

A fin de asegurar el cumplimiento de las disposiciones de esta Ley, el Comisionado tendrá las siguientes facultades y deberes:

a) **Imponer multas administrativas o sanciones por violación a las disposiciones de este Capítulo**, conforme con las disposiciones de la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como "Código de Seguros de Puerto Rico", **a iniciativa del Comisionado o luego de presentada una querella por un proveedor participante por motivo de dicho incumplimiento.** Disponiéndose que, el proveedor tendrá un término de un (1) años para radicar la querella, contados a partir de la fecha en que expire el término para el pago de una reclamación procesable.
[…]

c) El Comisionado tendrá la jurisdicción original respecto a las controversias que surjan entre proveedores participantes y aseguradores u organizaciones de

servicios de salud, al amparo de esta Ley. […] 26 LPRA sec. 3008 (énfasis suplido).

En cuanto a la imposición de sanciones, nuestro Tribunal Supremo ha reconocido que al momento de los tribunales ejercer su función revisora, se le debe otorgar gran discreción a la determinación de la agencia, por lo que las sanciones "serán sostenidas siempre que los organismos actúen dentro del marco de su conocimiento especializado y de la ley". OEG v. Román, 159 DPR 401, 417 (2003). Por este motivo, "siempre que la sanción administrativa esté basada en evidencia sustancial, no constituya una actuación *ultra vires* y tenga una relación razonable con los actos que se quieren prohibir, los tribunales deben sostenerla". Íd.

**III.**

Reseñado el derecho aplicable, procedemos a resolver los errores planteados por TSA.

Mediante el primer señalamiento de error, el Recurrente arguye que erró el Comisionado al determinar que tiene jurisdicción cuando la OCS no "contempló un análisis sosegado de la materia objeto de la legislación federal en contraposición a las disposiciones del Código de Seguros que estima resultan aplicables".[12] Sostuvo que mediante el *Medicare Advantage Act* se desplazó toda legislación estatal, permitiendo únicamente a los estados y territorios regular temas relacionados con licenciamiento y solvencia. Por consiguiente, debido a que la controversia versa sobre un recobro de una reclamación pagada incorrectamente, y ello no cae en las categorías de licenciamiento y solvencia, el Comisionado de Seguros no tenía jurisdicción al ser ello campo ocupado. Veamos.

Partimos nuestro análisis estableciendo que, recientemente y luego de presentado el recurso ante nuestra consideración, el Tribunal Supremo de Puerto Rico resolvió un asunto análogo al planteado en el caso de epígrafe. En MCS Advantage, Inc. v. Fossas Blanco, 2023 TSPR 8, 211 DPR ___ (2023), la controversia que el alto foro adjudicó se circunscribió a determinar si es la OCS el foro con jurisdicción primaria exclusiva para

---

[12] *Véase*, Recurso de Revisión Judicial, pág. 10-11.

entender en una controversia entre una aseguradora y un proveedor de servicios de salud respecto al reembolso de determinadas reclamaciones no procesables pagadas, al amparo de la Ley de Pago Puntual.

Por ser de particular importancia para nuestro análisis los planteamientos esgrimidos ante el Tribunal Supremo, resumimos los planteamientos de ambas partes. En dicho caso, el recurrente planteó que era la OCS el foro con jurisdicción primaria exclusiva para resolver controversias sobre la relación contractual entre aseguradora y los proveedores de servicios de salud, a la luz de dicho estatuto. Mientras que la parte recurrida en dicho caso planteó que era el Tribunal de Primera Instancia el foro que debía atender la controversia y no la OCS. Fundamentó su posición puesto que "a su juicio, se trataba de determinada acción de reembolso sobre reclamaciones no procesables pagadas a un proveedor bajo un **plan Medicare Advantage; es decir, al amparo de un programa de salud sujeto a las leyes y reglamentaciones federales y no a lo dispuesto en el Código de Seguros de Puerto Rico,** *infra*". Íd. (énfasis suplido).

Trabada así la controversia, resolvió el Tribunal Supremo que era el Comisionado de Seguros el encargado de adjudicar aquellas controversias que surjan al amparo de lo dispuesto en el Capítulo 30 del Código de Seguros, el cual recoge lo relacionado a la "Ley para el Pago Puntual de Reclamaciones a Proveedores de Servicios de Salud", *supra*. Así pues, dicho foro entendió que los asuntos relacionados al reembolso o recobro de determinadas reclamaciones presuntamente no procesables y pagadas a un proveedor de servicios de salud debían ser ventilados ante la OCS. Ello a la luz del "claro mandato legislativo que confirió a la referida dependencia gubernamental la jurisdicción original para resolver las controversias que surgieran entre una aseguradora y un proveedor de servicios de salud al amparo del Código de Seguros, *infra*, y, en específico, de la *Ley para el Pago Puntual de Reclamaciones*, *infra*". Íd.

Nótese que en el referido caso el Tribunal Supremo tuvo ante sí un planteamiento sobre la aplicabilidad o no de la ley federal para propósitos de la adjudicación en los méritos de la controversia. Tan es así que la resolución en los méritos por parte de la Mayoría del Tribunal produjo una Opinión Disidente de la Jueza Presidenta, Hon. Maite Oronoz Rodríguez, quien entendió que había que aplicar la legislación federal al caso, puesto que la misma ocupaba el campo en dicha materia. Así pues, entendió la Jueza Presidenta que era el Tribunal de Primera Instancia el foro con jurisdicción para atender una controversia sobre el reembolso o recobro de los pagos no procesables en servicios relacionados con MA. De hecho, además de entender que ocurría desplazamiento de la ley federal, en la Opinión Disidente se expresó que adicionalmente existía un fundamento adicional para resolver que dicha legislación era aplicable, toda vez que las partes en dicho caso habían pactado en su contrato de servicios que el *Medicare Advantage Act* y la reglamentación aplicable era la que gobernaría su relación contractual. No obstante lo anterior, ese no es el estado de derecho actual en nuestra jurisdicción.

Es, pues, evidente que, al emitir su determinación, el Tribunal Supremo entendió que una controversia sobre el recobro de un pago no procesable entre un proveedor de servicios de salud y una aseguradora debe ser ventilado ante la OCS, por ser el foro con jurisdicción primaria exclusiva para atender asuntos planteados a la luz de la Ley de Pago Puntual. Similar fue la controversia que tuvo ante sí el Comisionado al emitir la *Resolución* recurrida y que TSA solicita que revoquemos. Sin embargo, a la luz de lo resuelto en MCS Advantage, Inc. v. Fossas Blanco, *supra*, no existe cabida para acoger su teoría. El Tribunal Supremo, en una decisión 7-1, concluyó lo contrario a lo que hoy TSA propone ante nuestra consideración. Ese el estado de derecho vigente y como tal, venimos compelidos a respetarlo. Más aún cuando del análisis de los contratos en controversia se desprende que las partes acordaron que el pago por los

servicios contratados estaría sujeto a los postulados normativos del Capítulo 30 del Código de Seguros.

Sostenemos que ello es cónsono con las disposiciones del 42 CFR sec. 422.520(b)(1), mediante las cuales se instrumentó la obligación de las organizaciones de servicios de salud o aseguradoras y los proveedores a incluir en sus contratos cláusulas que establezcan los términos para el pago puntual de las reclamaciones o servicios rendidos. De una lectura de dicha Sección, podemos concluir que al no establecerse en el *Medicare Advantage Act* ni en las disposiciones reglamentarias del CFR los estándares específicos en cuanto al pago a los proveedores participantes del MA, se abrió la puerta para que las partes pudieran regular el proceso de pagos a realizarse.

A causa de ello, además de por la importancia, complejidad y efecto en la economía y la sociedad, fue que se aprobó la Ley de Pago Puntual, con el fin de regular el proceso del pago de las reclamaciones entre las aseguradoras y proveedores. En el presente caso, no existe controversia en que las partes, entiéndase TSA y los laboratorios, aceptaron mediante sus contratos la aplicación de la Ley de Pago Puntual.[13] Por lo tanto, consintieron a la jurisdicción de la OCS mediante lo establecido por la Carta Normativa número 2010-110-PP y lo resuelto por el Tribunal Supremo en MCS Advantage, Inc. v. Fossas Blanco, *supra*.[14]

Por otro lado, como ya mencionamos, TSA trajo ante nuestra consideración y solicitó que tomáramos conocimiento judicial sobre Medicaid & Medicare Advantage Prod. Ass'n of Puerto Rico, Inc. v. Emanuelli Hernandez, 58 F.4th 5 (1st Cir. 2023). Dicho pleito atendió una controversia sobre la Ley Núm. 90-2019, la cual, en síntesis, requería que

---

[13] *Véase*, Contratos Ap. de la Recurrente a las págs. 97-123, 165-192 y 201-226.

[14] Como ejemplo de ello, en MMM Healthcare, Inc. *et al.* v. The Commonwealth of Puerto Rico, *et al*., Caso Civil núm. 13-1676(PAD), el Tribunal de Distrito para el Distrito de Puerto Rico concluyó lo siguiente: "The court finds the Puerto Rico Prompt Payment of Claims to Health Services Providers Act, 26 L.P.R.A. §§ 3001-3008, is not preempted by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, 42 U.S.C. § 1395w-26(b)(3)". Debemos señalar que el mencionado caso fue apelado ante el Tribunal de Circuito de Apelaciones para el Primer Circuito, bajo el caso núm. 16-2306, y se encuentra en espera de adjudicación.

las organizaciones de MA pagaran a los proveedores de Puerto Rico una tarifa no menor a la establecida por CMS.

Observamos que la controversia de dicho caso no incide sobre las disposiciones del pago puntual ni del Capítulo 30 aquí en controversia, sino que analiza otro estatuto sobre una materia distinta. Por consiguiente, la determinación realizada por el foro federal sobre la Ley Núm. 90-2019 no afecta la controversia del caso ante nos. Por su gran relevancia, citamos, la nota al calce número 5 de la Opinión emitida por el Tribunal Supremo de Puerto Rico en MCS Advantage, Inc. v. Fossas Blanco, *supra*, en la que se expresan y distinguen las controversias de ambos casos. La misma, en lo pertinente, lee como sigue:

> Es decir, contrario a lo resuelto recientemente por la Corte de Apelaciones de Estados Unidos para el Primer Circuito en *Medicaid and Medicare Advantage v. Emanuelli Hernández*, 2023 WL 234310, **en el presente caso no estamos ante la alteración de estándares federales por parte de nuestra Asamblea Legislativa que fue el asunto que tuvo ante su consideración el aludido foro**. (Énfasis suplido).

Así pues, conforme lo resolvió el alto foro judicial, no estamos ante una ley que intente alterar la reglamentación federal como ocurrió en el caso traído ante la consideración del Tribunal de Circuito de Apelaciones para el Primer Circuito y, por tanto, procede concluir que no erró el Comisionado.

Mediante el segundo señalamiento de error, TSA alega que los recobros de pagos efectuados a los proveedores relacionados con la cubierta de MA no forman parte de las disposiciones del pago puntual, por no ser atendido en el inciso (a) del 42 CFR sec. 422.520. Por ende, plantea que, al no estar bajo lo concerniente al pago puntual, el Comisionado no tiene jurisdicción sobre dicha materia por estar el campo ocupado.

Primeramente, nos remitimos a nuestro análisis del primer señalamiento de error. Sin embargo, luego de estudiar el *Medicare Advantage Act* y el CFR, concluimos que ninguno establece procedimiento alguno, en lo relativo a las controversias que pudieran suscitarse entre las aseguradoras y los proveedores sobre el pago de los servicios de salud

contratados. Sobre el tema de recobros de los planes MA que alega TSA que no es parte del pago puntual, tanto la ley como la reglamentación federal guardan silencio. En contraste, y a manera ilustrativa, el Congreso sí se expresó específicamente para los casos de las acciones de recobro de los Intermediarios de Medicare o *Medicare Administrative Contractors*, las cuales se encuentran regulados en el 42 CFR sec. 405.1803(c). Entiéndase que ni el *Medicare Advantage Act* ni el CFR regulan el proceso en torno a los recobros de las reclamaciones pagadas incorrectamente por las organizaciones de servicio de salud o aseguradoras a los proveedores, en lo que al MA respecta.

Tal y como hemos adelantado, en MCS Advantage, Inc. v. Fossas Blanco, *supra*, el Tribunal Supremo concluyó que la OCS ostentaba jurisdicción primaria exclusiva sobre los casos que surgen al amparo del Capítulo 30. Por tanto, queda claro que no erró la OCS al determinar que posee jurisdicción sobre los recobros efectuados a los proveedores relacionados con la cubierta de MA. Como establecimos, el *Medicare Advantage Act* ordena a las aseguradoras y a los proveedores a incluir cláusulas en sus contratos que establezcan el pago puntual por los servicios brindados, por lo tanto, la Ley de Pago Puntual determina el procedimiento y términos de pagos de las reclamaciones procesables y no procesables, en el caso de autos pues las partes así lo pactaron. De surgir una controversia sobre reclamaciones pagadas no procesables, el Capítulo 30 del Código de Seguros implementa los contornos normativos que regulan el proceso y a los cuales las partes se sometieron voluntariamente.

Por último, mediante el tercer señalamiento de error, TSA alega que erró la OCS al confirmar la imposición de las multas e interpretar que implica un incumplimiento automático el presentar oportunamente una moción alegando falta de jurisdicción. No le asiste la razón.

El Recurrente alega que el Artículo 8(b) de la Regla I-A del Reglamento Núm. 5266, *supra*, permite que se impugne una investigación cuando "el requerimiento o solicitud de información exceda la autoridad del

Comisionado por no caer dentro del alcance de las investigaciones de éste, según definido en el Artículo 4 del Reglamento, o no tener relación alguna con la zona de intereses contemplados en las leyes que este administra". Planteó que el fundamento para impugnar la investigación fue la falta de jurisdicción de la OCS, de conformidad con dicha disposición.

En el caso de autos, el término concedido por la OCS para que el Recurrido entregara la información solicitada vencía, en el caso del Promotor II, el 28 de julio de 2020 y sobre los otros dos el 24 de agosto de 2020. Recordemos que del propio Requerimiento se le apercibió a TSA que, en caso de incumplir con la *Orden* del Comisionado, se tomaría como una obstrucción al poder de investigación, lo cual tenía como efecto la imposición de sanciones. A pesar de ello, no fue hasta el 27 de septiembre de 2020, que TSA presentó su moción de falta de jurisdicción. Por consiguiente, al no cumplir dentro del término concedido para contestar el Requerimiento y esgrimir dentro del mismo el planteamiento jurisdiccional, el Comisionado decidió imponerle la multa de $5,000.00 por cada caso. Dicha determinación es una razonable y no constituye una actuación *ultra vires*, ni se excede de los poderes delegados a la OCS. TSA estuvo adecuadamente apercibido de las consecuencias de su incumplimiento y, aun así, incumplió con lo ordenado. Si bien reconocemos que los asuntos jurisdiccionales son privilegiados y deben ser atendidos con prioridad, no es menos cierto que TSA esperó hasta luego de vencido el plazo para producir la información solicitada por la OCS para hacer dicho planteamiento.

**IV.**

Por los fundamentos que anteceden, *confirmamos* la *Resolución* recurrida del Comisionado de la OCS.

Lo acordó el Tribunal y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones